PEOPLE ex rel. ATKINS v. CITY OF BUFFALO.    563

App. Div.]    Fourth Department, July Term, 1901.

---

The People of the State of New York ex rel. Charles Atkins, Appellant, v. The City of Buffalo and Others, Respondents.

*Tax sale to the city of Buffalo — it is not affected by the subsequent levying of taxes — subsequent sales are subject to the interest acquired by the city.*

The interest acquired by the city of Buffalo in land which the comptroller thereof bids in at a tax sale, pursuant to its charter (Laws of 1891, chap. 105, § 110), is not affected by taxes subsequently levied upon the land, nor extinguished by sales under them, notwithstanding that it has taken no steps to extinguish the right of redemption after the sale to it and has continued to assess the premises as before.

The sale of the lands to an individual at a subsequent tax sale does not affect the prior tax liens held by the city, and it was, therefore, competent for the Legislature, by chapter 280 of the Laws of 1898, to require such an individual, as a

564   PEOPLE ex rel. ATKINS v. CITY OF BUFFALO.

Fourth Department, July Term, 1901.          [Vol. 63.

condition of his obtaining a conveyance under the sale to him, to take and pay for an assignment of the outstanding prior tax liens held by the city upon the premises, and to provide that this statute should apply to a tax sale held before its enactment.

Appeal by the relator, Charles Atkins, from an order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Erie on the 17th day of November, 1900, denying his motion for a peremptory writ of mandamus.

*George C. Miller*, for the appellant.

*William S. Jackson*, for the respondents.

Order affirmed, with fifty dollars costs and disbursements, on opinion of Kruse, J., delivered at Special Term.

All concurred.

The following is the opinion delivered at the Special Term :

Kruse, J. :

This is an application by the relator for a writ of peremptory mandamus, commanding the defendant officers to execute and deliver to him a conveyance of certain lands and premises situate in the city of Buffalo, bid in by the relator upon a sale for taxes.

At the annual tax sale in May, 1897, the defendant comptroller sold the lands respecting which this controversy arises for the taxes levied the preceding year. They were bid in by the relator for ten dollars and twenty-eight cents, the amount of the taxes and additions thereto. The comptroller issued to the relator his certificate of sale, as required by the charter of the city of Buffalo, under the provisions of which the sale was made, and thereafter a notice to redeem was served, as required by the charter, and, no redemption having been made within the time required by law, the relator surrendered his certificate of sale, and filed his statement and papers showing a compliance with the charter, as he claims, so as to entitle him to a conveyance of the lands and premises so sold.

The defendant officers against whom the writ is sought challenge the right of the relator, and deny that he has complied with the provisions of the act under which they are authorized and directed

PEOPLE ex rel. ATKINS v. CITY OF BUFFALO.    565

App. Div.]        Fourth Department, July Term, 1901.

to perform the official acts the performance of which the relator seeks to compel.   The specific objections will be stated presently.

It appears by the opposing papers that for a series of years prior to this tax sale the lands were sold annually for taxes aggregating the sum of $3,600.98, and were bid in by the city, but the city never perfected title thereto.   So far as the papers show, nothing was done by the city to extinguish the right of redemption after the sale, and the city continued to assess the lands after each sale as before.

Subsequent to the purchase made by the relator in 1897, the Legislature amended the charter of the city of Buffalo under which this sale was made, by making the additional requirement for obtaining a conveyance under a tax sale that the purchaser should take and pay for an assignment of all outstanding prior tax liens held by the city upon the premises (Laws of 1898, chap. 280), and specifically provided that the amendatory act should apply to the tax sale at which the relator purchased these lands (Laws of 1898, chap. 280, § 6).

The relator refuses to comply with this additional requirement, and the defendant officers urge that they are prohibited by the express terms of the act under which they derive their authority from executing this conveyance without the relator taking and paying for an assignment of these prior tax liens held by the city upon these premises.   The relator demands the execution and delivery of the conveyance to him without payment of these prior tax liens, contending that he bid off these lands at this tax sale, and advanced the money so bid by him under the then existing provisions of law, and that the provisions of this amendatory act, so far as made applicable to this sale which was made prior to its enactment, is an attempted impairment of a contract, and is, therefore, unconstitutional and void.

It is a general rule that the property of a municipality used for public purposes is exempt from taxation, and whether a distinction exists between property acquired for a public purpose and such as is not strictly so held, was discussed but not decided, in *People ex rel. Mayor* v. *Assessors* (111 N. Y. 505).

While the Tax Law (Laws of 1896, chap. 908) now subjects to taxation the property of a municipal corporation not within its territorial limits (*People ex rel. City of Amsterdam* v. *Hess*, 157 N. Y. 42), yet no good reason exists for taxing its own property to pay a tax to itself,

and the rule would seem to apply with equal force as regards such a tax to all property rights of the municipality, for no useful purpose would ordinarily be accomplished by such a course of procedure. And so it would seem equally abortive to require a municipal corporation, holding a prior tax lien or claim to property, to redeem from its own sales. Such a course would result in returning the tax which the tax sale proceeding was intended to collect, together with interest and other charges and additions thereto. While it would undoubtedly be competent for the Legislature to provide for the taxation of public property, such presumption will not be indulged in unless explicitly so provided.

As was said by Judge O'BRIEN in *Matter of Hamilton* (148 N. Y. 310): "The end and object of all taxation is to raise revenue for the purpose of defraying expenses of government, and since no revenue could be raised by imposing taxes on property owned by the state itself, or by any of its political divisions, such property is in no just or practical sense the subject of taxation. It is never supposed to be included in the terms of any law providing for the imposition of taxes, however general it may be, not because it is exempt, in the sense in which that term is generally understood, but for the reason that in the nature of things it never was and never can be taxable. The power of taxation applies to the property of persons, either natural or corporate, within the jurisdiction of the government and not to the government itself. Public property is non-taxable, not upon the theory of exemption, but for the obvious reason that there is no law, and practically never can be a law, making it taxable. Of course a statute might be enacted including it within the operation of tax laws, but since the government would have to pay the tax itself such a law would be utterly useless."

In *Trustees of Public Schools* v. *City of Trenton* (30 N. J. Eq. 667) it appeared that the charter of the city of Trenton contained a provision preferring the lien for taxes over prior mortgages and other incumbrances, and it was held not applicable to mortgages made to the State to secure funds of the State invested in the mortgages. At page 681 the court say: "The immunity of the property of the State and of its political subdivisions from taxation does not result from a want of power in the Legislature to subject such

PEOPLE ex rel. ATKINS v. CITY OF BUFFALO. 567

App. Div.]      Fourth Department, July Term, 1901.

property to taxation. The State may, if it sees fit, subject its property and the property owned by its municipal divisions to taxation in common with other property within its territory. But inasmuch as taxation of public property would necessarily involve other taxation for the payment of the taxes so laid, and thus the public would be taxing itself in order to raise money to pay over to itself, the inference of law is that the general language of statutes prescribing the property which shall be taxable is not applicable to the property of the State or its municipalities. Such property is, therefore, by implication excluded from the operation of laws imposing taxation, unless there is a clear expression of intent to include it."

The late Justice Daniels reached the same conclusion under the provisions of the former charter of the city of Buffalo, which was superseded by the present charter, respecting the lien of a mortgage owned by the city against certain lands sold for taxes levied subsequent to the mortgage, holding that the lien of the mortgage was not extinguished by the tax sale, notwithstanding the provision contained in the former charter that the grantee should hold and enjoy the premises sold for taxes during the term for which they were granted, free and clear of all claim of owner and occupant, and of all persons interested therein. (*Tifft* v. *City of Buffalo,* 9 N. Y. Supp. 920.)

Under the former city charter the lands were sold for the shortest term for which any one would take them and pay the tax, while now they are sold in fee to the highest bidder, with a right of redemption to the owners or parties interested. Provision is made in the present city charter requiring the comptroller to bid at least the amount of the taxes for which the land is to be sold, if no other bidder will bid that amount. (Laws of 1891, chap. 105, § 110, Revised Charter.) But no express provision is made for redeeming by the city from a tax sale premises upon which it holds a prior tax lien, or other claim, although the charter provides that upon a failure to redeem as therein provided, the purchaser is entitled to a conveyance which shall vest in the grantee absolute title in fee. (§ 115.) Notwithstanding this general provision for vesting in the grantee an absolute estate in fee, in view of the general rule of excluding public property rights from taxation, and the general scope of the present revised charter regarding the raising of revenue

and taxation of property, I think the prior tax claims held by the city have not been extinguished by the subsequent unredeemed sale, but that they are still liens upon these premises, and the relator himself alleges in his petition that these tax liens are still outstanding and liens upon the premises, although it is now claimed otherwise on his behalf.

I am of the opinion that the taxable right in lands within the city of Buffalo under its present city charter does not include prior tax liens held by the city, or other claims belonging to it, and that the city is not required to redeem from its own tax sale to prevent the extinguishment of such a lien or claim while held by it. If I am right in this conclusion, that the claim of the city for these prior taxes was not affected by the sale made for the tax subsequently levied, I think it was competent for the Legislature to make the additional requirement to effect the payment of its prior taxes, and apply such a provision to sales made prior to the enactment of this provision. A purchaser of lands, whether at tax sale or otherwise, which are subject to unpaid tax claims, takes his title subject thereto, and the changing of the method of collection thereof, even to the substitution of an entirely new remedy for the enforcement of the payment thereof, does not necessarily contravene any constitutional inhibition. This amendment only makes more effective the remedy for the enforcement of a pre-existing right, without impairing the relator's claim, and statutes of that character have been uniformly upheld. (*Butler* v. *Palmer*, 1 Hill, 324; *Curtis* v. *Whitney*, 13 Wall. 68; *Hosmer* v. *People*, 96 Ill. 58; *Matter of Comrs. Elizabeth*, 49 N. J. Law, 488.)

The relator's right is in no way substantially impaired by the amendment to the city charter requiring the payment of the city's unpaid tax liens as a condition of the execution and delivery of the deed of conveyance by the city to him, for the city could have proceeded at any time under its tax liens and perfected its title to the lands and cut off the relator's inchoate right acquired by him under the tax sales, as that right was subject to the prior tax claims held by the city, and besides, as between him and the owner of the private right, it seems he is entitled to the possession of the lands, and no deed is necessary if the proper notice has been given and the relator has complied with all the requirements of the law so as to

extinguish the private right in these lands. (Revised Charter, § 114.) But, even if the deed is necessary to enable the relator purchaser to maintain his right of possession against the owner and tax debtor, I think the Legislature might lawfully direct the withholding of the deed until the payment to the city of the unpaid tax liens upon the premises, and such requirement would not be unconstitutional even as to persons who acquired the tax debtor's right and the entire private interest in the lands after the tax sale and before the law was enacted creating this additional method for collection of its tax and the enforcement of the tax lien against the land. The remedy may be summary, but, as is said by Judge Cooley in his work on the Law of Taxation (2d ed. p. 432): "Very summary remedies have been allowed in every age and country for the collection by the government of its revenues. They have been considered a matter of State necessity." While ordinarily taxes are collected of the persons taxed or enforced against the property in respect to which they are imposed, yet the State is not limited to these remedies. It may have the means in its own hands of enforcing the tax without calling upon any one or enforce payment of a tax by the restriction of rights, such as prohibiting the recording of instruments until the tax has been paid upon transactions evidenced by the instruments, and may even for non-payment of taxes forfeit the property entirely, and so in our own State the Legislature has substantially provided that no claim of property by any one shall be available to prevent a sale of personal property in possession of the tax debtor levied on for the enforcement of payment of the tax. (Tax Law, § 71; *Lake Shore & M. S. R. Co.* v. *Roach*, 80 N. Y. 339.) These methods are summary and in many instances quite drastic, and yet the courts have quite uniformly upheld methods of this character for the collection of taxes.

I have reached the conclusion that the application for a writ of peremptory mandamus against those officers should not prevail, and accordingly the motion is denied.

Motion denied.